The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the Ninth Circuit. We're here this morning in argument with respect to attorney's fees on National Family Farm Coalition versus the EPA. Although the docket sheet says San Francisco, as you can appreciate, I'm in San Diego. Judge Hawkins is in Phoenix and Judge Fletcher is in San Francisco. Although this is allocated at 20 minutes per side, because that would be the normal allocation for an environmental case on the merits, don't feel compelled to take up all your time because we aren't here just on a single issue. And with that, you may proceed. Well, good morning and may it please the court. George Kimbrell on behalf of the petitioners and I'd like to reserve five minutes for rebuttal and I'll watch my clock. All right. Now EPA does not dispute that the petitioners here are entitled to prevailing market rates for their environmental litigation expertise, only what that rate should be. And I'd like to start there pursuant to the court's argument instruction order. This court should hold that for petitions for review like this one, the relevant forum community for calculating prevailing market rates is whatever city the petition is heard in, in this case San Francisco, for three reasons. First, it's a clear rule that is consistent with this court's longstanding precedent for district courts and simply applies it in this context. The quote relevant legal community is the forum district in which the court sits. That goes all the way back to the Gates and the Barjon case in the 1990s. Thus the rates in that forum district of lawyers of similar skill, experience and reputation are the proper measure of the makes sense to mirror that rule for petitions for review. And in fact, that's what this court has done. If you look at pollinator stewardship council, which is the closest comparator to this case, it's also a case against EPA, also a case of fifth row about pesticides, also a case that was calendared and heard in San Francisco. And the council there at council in San Francisco, as well as another city in that case, Seattle, just like here. And the court applied Northern California rates to all petitioners council in that case. So that's, that's not a presidential case as you recognize. And the parties here also know that we actually heard this case initially in Seattle, um, with respect to the merits. So why all of a sudden should it now have a forum location of San Francisco? Well, Judge McKeown, absolutely right. That the first part of this case we had in Seattle, and that was a separate case that we won't see any fees for since EPA mooted it and required us to win the case a second time. So regardless of what happens, we're just going to get our fee reward for this second case. Um, it, the court did set second case in San Francisco. And as we pointed out in our 28 J letter on Monday, uh, the court has a practice of setting these cases. It appears, um, to, um, according to the appellate practice guide where petitioners reside. And here we do have strong ties or indices to the Northern district of California. There's, there's no question that had FIFRA allowed us to, we could have brought this case in the Northern district of California and district court, and it would have been entitled to Northern district rates for that case under prevailing law. Um, so I just want to mention one thing and get your reaction. You know, typically that is where the sitting locale is, is where petitioners reside or within that region, but that's not really been the case consistently in the ninth circuit in recent years. Um, so for example, we have cases, even if the petitioners may reside in California, where the argument is heard, we're talking just the appeal, the administrative appeal argument is heard in Seattle, or it could have been heard in Phoenix, um, uh, or in some other locale. So if there is not a uniform practice of where the circuit puts the cases quote for argument, then why would that rule apply? Well, that's a fair point, Judge McKeown. I think it, I think the, it's the best equivalent and comparator, uh, to simply apply it in this context. And we did in the 28J kind of layout, I think your point is well taken, but if you do look at the, for example, the, the petitions for review in 2021, there were nine of them and each of them seems to have ties to the forum district. Like we do here where three of the four petitioners in our case do reside in the Northern district of California. In fact, our major headquarters of operations is there. Most of our lawyers, uh, indicate, you know, um, generally in our organization, but three out of the four petitioners do. But for example, the one petition for review this year that was decided on a Phoenix calendar was brought by citizens of Phoenix. The one in Seattle was brought by the Washington dairy federation. And the ones in California seem to have petitioners that reside in California. One of them center for biological diversity is also a petitioner here with us today. So, um, I, I take your point and the court's rules, uh, I think are less than clear to us on the outside about where they set these for calendar generally, but it does seem to follow and be analogous to that district venue, um, rule. And more importantly, let me ask you if, um, you, you argue for San Francisco, um, you're from Portland. What if you also had on your team, a lawyer from New York city? And at this point, the New York city rates are exceed particularly for environmental lawyers, those either in Portland or San Francisco. What would be your position in that situation? Judge McKeon, I think it would have to be San Francisco. I mean, I think that's the consistent rule and I I'd love to discuss more why. Um, I think the, the place to look here is this court's decision in the Sierra club VEPA case in 2009. Now it's a memorandum disposition, but judge Hawkins, you're, you're on that panel as well as judge hog, as well as judge Betty Fletcher. And we cited that in our reply brief. And, you know, in that case, um, the court said that exceptions to the forum rule quote should not be undertaken lightly. Um, and explain that the courts, you know, when they were adopting the forum rule as, as the, the rule of law for this, um, we're adopting it, um, under a previous system where it was very much an individualized individual attorney based system. And in the Sierra club case, the court quoted and, uh, relied heavily on a 1986 third circuit task force, which looked very closely into this question when they were adopting the form rule and which subsequently, uh, other courts did as well and said, look, the forum rule is quote, not a precise instrument. And in some cases when adopted, it's going to undercompensate or overcompensate, but not withstanding those benefits and burdens it's preferable because of its objectivity and efficiency. Um, and, and instead of an individualized system, which could be why would it be inconsistent and unpredictable? If the rule is in a case such as this one, where the only fees that are at issue are the fees incurred in the petition for review, rather than any fees below, uh, that is to say, uh, what would be inconsistent or difficult to predict about a rule that said in that case, that is to say this case, uh, we apply the rates where the attorneys are, are, uh, are stationed and where they do their work. Judge Fletcher, I think there's a risk of inconsistency as to when to apply that rule. For example, I can talk about some of the new burdens it would create and I'll do that in a moment, but to your question of inconsistencies, I think the court would have to have a radical departure from setting one prevailing market rate for one forum to now setting multiple ones. And it would beg questions like, um, okay, how much time has to be spent out of forum by the given attorney? What if they spend some time in forum sometime out of forum to apply this new exception? Um, what if the attorney during the pandemic, wait a minute, what do you mean in form out of forum? That is to say I'm hypothesizing the case exactly like this one where the only judicial proceeding was the proceeding in the ninth circuit on a petition for review. Okay. Uh, understood. So in that instance, I guess the, the, the, the potential inconsistencies would be number one, um, questions raised as to why it's different or the inconsistency with how it's done for district court, uh, forum rule cases. But more than that, as I, as I was, um, indicating, and as we had in some of the papers myself, I worked at home for a large part of the case during the pandemic. I live in a different state, Washington across the river from Portland and Vancouver, Washington. So for that time, should I be billed at Washington rates versus Portland rates? That that's kind of what I meant. Where's the stopping point, the logical stopping point. What if I'm on the, at the beach on vacation with my family or in the mountains from a cabin, should I then be billed by a rate or whatever that locale is? Let me ask you, let me ask a version of judge, a different version, but a version of judge McKellen's question from time to time. We, uh, as it were, show the flag and have arguments in cities other than our normal arguments cities. For example, I have sat, uh, in Billings with then chief judge, uh, Thomas. And what if this case had been set in Billings, would you be arguing for the Billings rate? I think we'd have to judge the lesser. Pardon the pun, Billings rate, but would you be arguing for that rate? I doubt you would, frankly. I mean, you can say now that you would be, but I doubt that you would. In fact, I, you know, I, I think the chances of that seems, uh, less likely or, or unlikely given the kind of analysis of the calendaring. I mean, there are cases where you're expedited and I know that you're put on the first available calendar, uh, but here, I guess I would just bring us back to the facts of this case and say that we do have strong ties to the Northern district. And so I think that should weigh in our favor, but as a rule of law, I think you're right to be consistent. Um, that's what we would have to argue. And that, and that is our position legally that it should be based on the forum, um, where, where the, where the court hears the case, just like it is for district court appeals. And, and I'd like to, were you, were you required to file this appeal in the ninth circuit? No, we weren't. We, we were, we were required to file it in a court of appeals. We couldn't go to a district court. Um, but yeah, we filed it in the court of appeals in which our clients reside. But there were, there were no underlying proceedings in the appeal. So let's say for example, you decided to file it in the 10th circuit. Um, and you're from, uh, Portland and you had attorneys from Wyoming. And again, we'll, we'll add the New York attorney to the calculus. Uh, what would be your position then? Would it be the Denver rates would apply because it was heard in Denver? Yeah. Yes. Judge McEwen, I think that's the only consistent approach here. And I think that gets to my third reason why the court should adopt the forum rule for petitions for review here, um, as it has for district court cases, which is that, uh, adopting a different rule about where the attorney happens to be located would be a radical departure from that and would create a substantial new burden on courts and on nonprofit petitioners to now prove up multiple prevailing market rates for multiple jurisdictions based on where the attorneys have to be based. And I, and I think that's contrary to the purposes of Egypt, which is to level the playing field, um, and, and not to create burdens and also the court's instruction in Hensley that this fee proceeding not be a whole second major litigation. So the idea of having to present one expert for one market rate and another expert for another market rate and prove all of those. And again, in the 28 J letter, we gave some examples of this where you had up to, up to seven petitioners council. That's the, uh, safe chemicals, healthy family case that was heard in 2019 on the Seattle calendar. And there, uh, you had, as you posit judge McEwen, you had petitioners council from New York, from Chicago and from Washington, DC markets that are higher, uh, more expensive than Seattle. And so in that case, uh, you know, the government's theory here would, would work against them if their concern is, is the federal fisc on this. So I find, excuse me, I find, pardon me for interrupting, but I find the only way I can get a question is, and is to interrupt you. What's the purpose of allowing fees under Asia? It's to compensate the lawyers who did the work, who took it on. Um, I have no idea what the statistics are. I would guess that, uh, request to, first of all, you don't prevail that often against the mighty government. Um, and, and, uh, second, you're practicing, whether it's a solo office in a law firm or representing an NGO, um, it's to compensate for your efforts that were undertaken there. And wouldn't a rule other than where the fees were actually incurred, discourage people from taking on these cases? Um, well, we have the one exception to the, the forum rule right now that exists again, and still would only set one rate, not multiple rates, judge Hawkins. And that's if there are not attorneys available in the jurisdiction that would do the work. And so you're allowed to have out of jurisdiction rates to fulfill the purposes of the fee shifting statutes and enforce these public interest laws. Uh, of course that doesn't apply here. Uh, we do have counsel there and the government hasn't argued for it. And the exception that they would wish to create would require this substantial new burden of the, of the multiple jurisdictions. I think to get to your question, the quote I would give you from INSVG is, uh, I'm sorry, is, uh, the specific purpose of EGIS to eliminate the financial disincentive to challenge unreasonable government actions. Now here I would ask, I think there's a fairness piece of this, and we would ask the court, keep that in mind. This money, it's not like I'm at a separate law firm in Portland. This is my organization I work with. We're going to continue to bring cases in the Northern district, whatever our fee award in this case is going to go back into further work in this district, in this forum, in future cases. And in fact, in current cases that we have there, because we litigate a lot of cases there. So I don't think it is comparable to a situation where you have outside counsel in some other venue. Um, and so just to summarize, I would say that with the government's approach, the real concern is number one, it's a, it's a radical departure from the existing forum rule that we've had for 30 years. Number two, it's going to cause new problems. It's going to create a whole second litigation with multiple forums that have to be decided as far as their market rate and be more complicated, contrary to the purpose of these statutes. And it's not even going to solve the problem they claim it's going to solve, which is that it's going to save them money because in the examples we showed it won't. And with that, I'll save the rest of my time for rebuttal. All right. You may. Thank you. Good morning, your honors. And may it please the court. My name is Miranda Jensen with the United States department of justice, and I'm here on behalf of EPA. The court has asked the parties to focus on the correct geographical community for calculating market rates for petitioners, Portland based counsel, and you just provides an important lens through which to what is reasonable to attract competent counsel without providing a windfall for the two reasons, for the following two reasons, the court should apply Portland rates to attorneys, Kimbrough, parent and Vanson who litigated this case from Portland. First applying Portland rates is consistent with the local forum rule because the forum, in this case, the ninth circuit includes Portland. And second, the facts in this case illustrate that three of petitioners, main litigated this case from Portland. To my first point, applying the Portland, applying Portland rates here is consistent with the local forum rule. It's not a drastic departure from it in determining reasonable rate for specialized counsel entitled to enhance rates under EJ. Courts generally apply the prevailing rate in the relevant community. And the relevant community is typically the forum in which the court sets. And normally the fee applications are submitted to the district court where the case was litigated. And where counsel works in the same location as the court sits, as this court is acknowledged, a district court or the forum rules application is fairly straightforward. However, the forum here, the ninth circuit comprises several communities, including both San Francisco and Portland that have different prevailing market rates. Therefore, the analysis for cases like this one that do not originate in the broader forum. As petitioners concede in their last minute 28J letter, the court has not held that the relevant community for a petition for review is the city where the petition is heard. And the case law provided with the 28J letter does not support such a narrow approach. To the contrary, the case included as exhibit I, Seacrest v. Brady Hamilton, which was decided by a panel earlier this year, supports looking beyond the hearing location for the appropriate market rate. There, the court heard the case in Seattle, but counsel received Portland rates, which reflected his location. While the court did not discuss the reason... Can I interrupt for just a minute? Is the government willing to live with the rule that you're advocating here when we have the example posited by Judge McKeown, that is to say that we let, let's say we heard the case in Portland, but several of the lawyers are high price lawyers out of New York. Government willing to live with them, charging New York rates, even though the petition was heard in Portland? The governor or the government's position is that this court should follow the analysis that it applied in Sherrod v. Director, which was decided in 2015. And what does that mean in response to my question? That means that the court should look at the totality of the circumstances and the facts of the case to determine the prevailing market rate in which community is the relevant community. I'm not sure I heard an answer to my question yet. Are you willing to live with a rule that will allow New York rates in a case like this, where the petition comes straight to the circuit, when some of the lawyers work in New York, charge New York rates? To answer your question in a succinct manner, I would say it depends. And it's because the facts of every case, as this court has acknowledged, are really different. And so, you know, you don't, you don't have to answer the question, but I don't think, I don't think there are any relevant facts beyond the ones I've just given you. It's the identical case to this one, except that some of the lawyers work in New York. Are you willing to live with a rule in which those lawyers are compensated at the New York rates? So if those lawyers were contributing substantially to this case, and they could show, it's their burden to prove that they're entitled to the market rates that they seek. And if they could prove that they are in fact entitled to New York rates, then that would be correct. That's my very, that's my very question. Are they entitled to New York rates? In this case, there wouldn't be substantial evidence to support that. I'm not talking about this case. I'm giving you a hypothetical case in which the lawyers work, live, practice in New York. Why is this such a hard question for you to understand? I think it's because the government's position is that the rule that we're seeking is not specifically looking only to the location of where counsel is located. It's looking at the broader analysis, including where counsel is located, of course, but other factors as well that may come into play. Like in Sherrod, for example, the court looked at the location of the hearing and the location of counsel, and it acknowledged that the relevant community may depend on the facts of a particular case. So I think that that would be a strong case for providing rates to those New York lawyers, potentially at New York rates. But I think it's the government's position that it really depends on the facts of the whole case. Let me give you a more specific question that's been rolling around in my mind. We have a lot of pro bono cases in the Ninth Circuit, particularly because we have immigration. And on those cases, we have individual petitioners, and we have the government on the other side. And sometimes the pro bono lawyers who are appointed come from New York, and their rates, particularly where it's a specialized immigration type case, their rates are significantly higher. They've been appointed by the court, but of course, the petitioner lives somewhere in the Ninth Circuit, up and down the coast, let's say. So in that case, is the government willing to say that it is not the forum, but that you can take into account the market rates of the New York lawyers? I think absolutely, the court can take into account the rates of the New York lawyers. First of all, this is also a little bit of a different circumstance than the one here, because New York is outside of the Ninth Circuit. But it's not a different circumstance. And I'll tell you why. Because we're looking at EJA, we're looking at a statute that is applied nationwide. And we're looking at a statute that's applied in a whole series of different kinds of cases. So if you want a rule just for your case, I don't think that's going to happen. We need to figure out what are the ramifications beyond this. So let me just go a little further. You acknowledge that market rates would be appropriate factor. What are the other factors, in your view, that a court should consider if it decides not to go with the forum rate? Ultimately, going back to EJA's purpose, to adequately compensate counsel without providing a windfall. The analysis should really be grounded in that purpose. The factors the court looked at in Sherrod included the location of counsel and where the case was heard before the ALJ. But it didn't limit the analysis to those. And the government here doesn't suggest that the court need limit to an exhaustive set of factors. But in this case... I'm just asking you, I haven't heard a single factor yet other than the market rate. So does the government have suggested factors? So the factors here, for example, the location of counsel who are seeking market rates, the location of the counsel who are lead counsel and incurring the most fees, the location of the hearing is relevant, but perhaps not the determinative. We would argue not the determinative factor. And given this, the evidence that it would depend on the evidence that is supported in the fee application to determine where that took place. Another factor could be where the cause of action accrued. If it was in a particular spot within the Ninth Circuit, that might be a factor the court would consider. But EPA is not suggesting that there need be an exhaustive set of factors for the court to look at here. Just that whatever... Let's take where the cause of action accrued. And let's assume that the oil spill is in California and the pro bono, or it doesn't have to be pro bono, but maybe NGO is located in Montana. And it's a straight up appeal from an administrative determination. There is no district court case in my hypothetical. So I've got the oil spill, that's the cause of action. How does that figure in? So those would both be important factors, but it's petitioner's burden or it's the fee seeker's burden to show that they're entitled to the rates that they claim and that the community in which they're seeking fees is the relevant one. And so they would have to show whichever market they picked, why that was the relevant community. And there could be factors that lean in both directions and the court would have to weigh the evidence to determine what is most appropriate in that case. But here we have a much simpler case because the evidence all points to the majority of petitioner's main council team is located in Portland, including attorney Kimbrell, who is petitioner's lead counsel and incurred most of the fees here. On the other hand, the only San Francisco ties really are the fact that it was placed on the San Francisco oral argument calendar. But since this case was heard remotely, counsel was never actually required to travel to San Francisco. It's not the cause of action per se, but counsel noted, of course, that his clients are in Northern California. That may be true. The other piece that counsel did not mention is that Arizona was the only location where, as far as I understand, the only location within the Ninth Circuit that was the subject of the petition. So that would be another factor to consider. We got to come out with some kind of an opinion here and we can't have 29 factors to consider. So in this case, we have the Arizona locus that you mentioned. We have where the court to weigh or weight those kind of factors. Ultimately, it should be grounded in each's purpose to attract competent counsel and ensure that those fees are adequate to do so, but avoid providing that windfall. And so that's the ultimate underpinning of the analysis. And here, the fact that the case was heard in San Francisco doesn't end the handful of other reasons that Attorney Kimbrough provides in a second declaration, including that the Center for Food Safety is headquartered in San Francisco, mail is received in San Francisco, and the electronic documents are stored on servers physically located in San Francisco. Those facts don't outweigh the fact here that this case was litigated by counsel who hold themselves out as practicing its law in Portland with our Portland-based attorneys and did this work in Portland and seek fees on the San Francisco market rates on the basis that the court heard the case in San Francisco. Excuse me, so the government, tell me if I'm right or wrong in understanding your argument, the government would be comfortable a rule that is grounded in the location where the fees were incurred, in this case, Portland. Some of the fees, and would it include an acceptance of some of the fees incurred in other locations? Suppose Portland counsel, after initially getting into the case, discovers that this is a whole lot bigger an issue and needs real expertise, so he turns to, let's say, Jones Day in Washington, D.C. to help him out on the case. And counsel in Portland records his fees, counsel in Washington, D.C. at the firm records those fees. The government would be comfortable with that sort of regime. If I understand your question correctly, you're asking whether the government would be comfortable with looking solely at the location of counsel where they incurred the fees. Is that, am I understanding that correctly? I may not have been completely articulate. Let's say the bottom line rule you're proposing is the place where the fees were incurred, correct? That's not the totality of the picture, but that is a government wouldn't necessarily limit that as being the exclusive factor. In fact, the location of oral argument can be relevant, it just shouldn't be determinative. I may be confused. I thought the proposition the government was urging is that the bottom line rule would be where the fees were incurred, in this case, Portland, Oregon, correct? That's your bottom line position. That is not the full position. The broader context, if I can back up for just a moment, the government's position is that the forum is the Ninth Circuit as a whole, not specifically where the court heard oral argument. And in Sherrod, the court looked at different factors and determined that the relevant community is one where the litigation took place. That wasn't an EJIA case, was it? Well, I don't believe it wasn't an EJIA case. It was a normal attorney's fees, statutory entitlement. And that may get you a different rule than EJIA. Or are you saying it's always going to be the same? Because that is a statutory case with even more precise statutory language. That is correct, Your Honor. Often, courts treat fee statutes. Similarly, as in the situation with EJIA and under the civil rights statutes. And so, in the government's position, there wouldn't be a significant difference in that way that that is applied. And we think that even if there was, the Sherrod case provides a good framework for how the court should decide petition cases, free disputes under petition cases, where EJIA is the relevant statute. Where did the cause of action arise here? Because that was one of the factors you gave me an answer to one of the questions. My understanding is that the product was authorized only for use within Arizona. And that was presumably the jurisdictional hook for counsel to bring this case in the Ninth Circuit. So then turning back to the facts of this case, it's much simpler in the fact that even if the court doesn't want to apply several factors here, it can look at the the counsel, lead counsel was here and incurred most are in Portland and incurred most of the fees in Portland and was based in Portland. And so all of the factors facts here that really weigh in favor of applying Portland. Wait a minute. Now you're confusing me. You're saying all of the factors. But now your only thing you know, but the only thing you're talking about is the counsel is in Portland. But there's some other factors here. I apologize, Your Honor. The factors that we would advocate way more heavily in favor of applying Portland rates, given the facts of this case and the evidence presented, because as I met as Justin or as Judge McEwen pointed out earlier, for example, the client appears to be headquartered in the Northern District. Correct, Your Honor, that appears to be the case. And, you know, it just isn't as helpful here because the majority of counsel team was based in Portland and had the San Francisco office handled this case exclusively. Well, you know, here's my problem with the government's argument. You seem to be saying what really overrides here is the fact that counsel, three out of the four counsel, live, work in Portland and, quote, incur their fees in Portland. And that's pretty much the end of the matter. But as soon as we start moving counsel and hypotheticals to New York, all of a sudden the world becomes extremely unclear and fuzzy with multifactor tests that are a little bit hard for me to understand. I mean, I'm having trouble with the government's position because I don't quite understand what you're arguing for. So the government first would like to distinguish a little bit that in the government's view, the Ninth Circuit is the forum. And so going to New York or D.C., it presents a slightly different situation where the counsel is not available within or is not located within the forum. You can't be saying that EJIA will never allow charging of fees or rates for people who work outside the circuit. Are you saying that? I don't think so, Your Honor. What's the relevance of what you just said? So the relevance is that there is a special exception that EJIA already recognizes when counsel is not available within the forum. And so, you know, that may be a different avenue in a case where counsel is outside of the Ninth Circuit. What do you do with a situation where you have a national non-profit like Earth Justice? And so they've got offices all over and they need to pick different attorneys and different offices to assist on the appeal. Do you look at the market rates for each of those individuals, even though the appeal is in the broad Ninth Circuit forum? And so counsel would be located all over the United States with including some within and without the Ninth Circuit in my understanding, correct? Correct. I mean, if you have a national if you have a national non-profit, you know, it could be, you know, the Inc. Fund or some other non-profit as well. How would you determine under your factors rule to figure out how to award attorney's fees? And keep in mind, we wouldn't be talking about this if we hadn't already passed that threshold of whether we need to go beyond the very, you know, penurious hourly rate that normally would be awarded. Right, exactly. I think it's important to keep that in context because EJR really is grounded in that overshadowing principle that, you know, it's what's necessary. The fee should be what's necessary to attract competent counsel, but not go so far as to provide a windfall. And so if the fee applicant could show that, you know, the fees were... Why don't you answer my question about the national non-profit using counsel from different offices on the appeal? So the court should in that position look at, it might apply a different market rates to different counsel, but it could look at the, you know, where most of the work took place or who is lead counsel, where majority of the factors are kind of... If you need to get that precise, in this case, a third of it took place in Portland, a third of it took place in New York, and another third out of Chicago. How would that factor? It would definitely be a tougher case, Your Honor, because if the factors... It would be a tougher case, but what's the answer? Because whatever proposition we establish here is going to flow into these other EJR cases. So what would be the answer to my hypothetical? I think the answer could be, you know, if counsel could show that they were entitled to the market rates in Chicago, I'm blanking on all the locations, but say Chicago, New York, and San Francisco, then the counsel in those locations should receive that fee. You know, I think the government's position is that, you know, the location of counsel really is, should be weighted maybe more heavily than some of the other factors. You know, it just shouldn't be the conclusive rule, but in contrast to petitioners' purported rule where it would come down to where the case happened to be heard for oral argument, it is grounded in a more, is more reflective of where the litigation took place, and it is more in line with each's purpose of providing sufficient compensation, but without the windfall. I think we have your argument in mind. Thank you. All right. Thank you so much. Mr. Kimbrough. Apologies. I think I was muted there. Just a few points, Your Honors. I just want to emphasize, my friend on the other side is unable, you know, to respond as far as offering a general rule here. I think that's really telling. You know, we're saying this should be the rule, just apply the forum rule that's been in place for district court cases for several decades now. They're offering kind of a messy balancing test that is very unclear. As you noted, Judge McEwen, I think there's a hundred different fee-shifting statutes here that could be affected by this, not just EJIA, what the court decides here. So what we're offering, what we're arguing for is kind of a fair, efficient, not a second major litigation, looking at the forum, that's not going to create more complications the way theirs is. Even under their second, even under their balancing test, under the charade, we have strong ties to the Northern District. The record in this case were done from there. We did have counsel on, you know, on our team working from there. One of our counsel there did, you know, did the oral argument with me. So three of the petitioners reside there. So even under that type of a balancing test, I think it weighs in our favor. I think with regards to why we had counsel here in Portland versus our attorneys in San Francisco, we staffed the lawyers we needed on this case to win the case. I mean, it's as simple as that. This isn't a big law firm that we have here like Jones Day or anything like that. You know, we were up against it here and this was an exceptional case and we did what was required to win it. So, you know, I think the argument with regards to either the factors or, you know, they're not able to offer you a rule of law here. It's kind of an expedient position that would benefit them in this case, but it's very telling that they're not willing to agree to New York rates for a case that was heard in the Ninth Circuit or in San Francisco on this. And so, you know, I think... Counsel, wouldn't the rule you are articulating, the bottom line rule, discourage qualified, technically qualified people from taking on the government in cases like this? No, Judge Hawkins. I mean, it's been the rule. We cite a ton of cases in our briefing, in a footnote in the reply brief, that are all district court cases where, you know, New York lawyers in the Northern District getting Northern District rates. So it is the rule and has been for several decades without problem. With the exception and the policy here for EJ is if no one in the district is there to represent them, then they do get their own rates. So that solves your honors problem, but without creating this two jurisdiction new burden that the government's approach posits. Let me tell you the problem that doesn't solve. A highly qualified senior associate at a major firm in Chicago, New York, or Washington, D.C. walks into the managing partners office and says, I've got a chance to take on a major challenge to an environmental rule, which will have longstanding impact. But I want you to know if we take it on, we can't charge our normal rate of $800 an hour. We will have to charge the rate that prevails in San Francisco. I'm making this up, $600 an hour. That's the problem that your rule doesn't solve. But Judge Hawkins, fair point, but that's been the rule in the district courts for 30 years now, and it hasn't created an issue. In other words, if the case is to be brought in district court, that is what would happen as a general rule anyway. And the big firm scenario, respectfully, I don't think is the point for EJ. It's the point for nonprofits. So I'd ask the court to keep that in mind. I just want to end with the points about some alleged windfall in this case. And I do think there are strong fairness arguments. And I ask the court to keep the overall context of this case in mind when issuing this decision, which is that this is an extraordinary case any way that you measure it. Legally, it created several important pesticide law precedents. More broadly, in environmental law, Berkeley Law School said it was one of the top 10 most important environmental law decisions of last year. On the ground, it dealt with millions of acres of drift farm and hundreds of endangered species and was covered by newspapers across the country. And we've had to that doesn't help us solve this problem. Fair Judge Hawkins, I just mean in a context of EJ and fairness, EJ is about leveling the playing field and San Francisco rates does that here. And more importantly, we achieved an excellent result in this case. Excuse me. One way to level the playing field is to have highly competent people on both sides so that the individual person challenging an environmental rule is not overwhelmed by the size and resource advantages the federal government has. That's my point. No, no problem. If I can respond and just finish, I would unless there are further questions. But Judge Hawkins, I would say that's been the rule in the district courts for several decades. We ask that you look to the Sierra Club case that not to make exceptions lightly and just mirror it. It's a consistent rule. It's easy to apply. It's fair. It's not perfect, but it's much easier than the messy balancing test that the government is offering here in which they're not even willing to agree to as kind of making a rule of law on this. So again, I would say we achieved an excellent result in this case. They don't even dispute that we're entitled to a fully compensatory fee award for this work. It was an extraordinary case and we ask that you keep that in mind. Thank you. I'd like to thank both counsel for your argument. The case just argued is submitted and we're adjourned. This court for this session stands adjourned.
judges: HAWKINS, McKEOWN, FLETCHER